**FILED**
(SPACE BELOW FOR FILING STAMP ONLY)

2008 JUL 23  PM 3: 53

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯DEPUTY

'08  CV 1 3 3 3 BTM POR

1  MATTHEW T. WAKEFIELD, SBN 175040
   ERIC C. SCHWETTMANN, SBN 188784
2  ALEXANDRA M. STEINBERG, SBN 227427
   BALLARD ROSENBERG GOLPER & SAVITT LLP
3  10 Universal City Plaza, Sixteenth Floor
   Universal City, CA 91608-1097
4  Telephone:  (818) 508-3700
   Facsimile:  (818) 506-4827
5
   Attorneys for Defendant
6  KSL DC MANAGEMENT, LLC
   d/b/a HOTEL DEL CORONADO
7

8              UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

| 11 | NELIA MILLS, | CASE NO: |
| 12 | Plaintiff, | **NOTICE OF REMOVAL OF CIVIL ACTION; DEFENDANT'S** |
| 13 | vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| 14 | KSL DC MANAGEMENT LLC, DBA HOTEL DEL CORONADO; AND DOES 1 to | **NOTICE OF REMOVAL OF CIVIL ACTION** |
| 15 | 50, inclusive, | **BY FAX** |
| 16 | Defendants. | [San Diego Superior Court Case No. 37-2008-00079467-CU-WT-CTL] |
| 17 | | Complaint Filed:    March 7, 2008 |

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

⬜ **ORIGINAL**

373247.1

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

Defendant KSL DC Management, LLC d/b/a Hotel Del Coronado ("Defendant") states as follows:

1.    On March 7, 2008, Plaintiff Nelia Mills ("Plaintiff") filed her Complaint in the above-entitled civil action in the Superior Court for the State of California, County of San Diego, Case No. 37-2008-00079467-CU-WT-CTL, which is presently pending against Defendant ("Superior Court Action").

2.    Defendant first became aware of the Superior Court Action on June 24, 2008, when it was served with the Summons and Complaint setting forth the claims for relief upon which Plaintiff's Superior Court Action is based. True and correct copies of the Summons and Complaint served on Defendant are attached hereto as Exhibit "1."

3.    Defendant filed its Answer in the Superior Court Action on July 22, 2008. A true and correct copy of Defendant's Answer filed in the Superior Court Action is attached hereto as Exhibit "2."

4.    Defendant is informed and believes that none of the purported Doe Defendants have been served with the Summons and Complaint.

5.    The Summons and Complaint filed by Plaintiff (Exhibit "1") and the Answer filed by Defendant (Exhibit "2") constitute all of the process, pleadings, and orders which Defendant has knowledge of being filed in the Superior Court Action.

6.    Plaintiff's Superior Court Action is a civil action over which this District Court has original jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1337, and 29 U.S.C. §185(a). Plaintiff's Superior Court Action is one which may be properly removed to this District Court pursuant to 28 U.S.C. §1441(a) in that:

a.    The Complaint alleges that Defendant was an employer and employed Plaintiff at a location in San Diego County, California.

b.    At all times material herein, Defendant was an "employer" employing employees in an industry "affecting commerce" within the meaning of Sections 2(2) and 2(7) of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. §§152 (2) and (7).

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

c.   At all times material herein, Defendant was a party to a collective bargaining agreement ("CBA"), which governed the employment of certain employees, including Plaintiff. True and correct copies of the relevant portions of the CBA are attached hereto as Exhibit "3".

d.   Plaintiff's Superior Court Action alleges causes of actions for: 1) disability discrimination / failure to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations; 2) disability discrimination / harassment; 3) disability discrimination / disparate treatment; 4) tortious discharge in violation of public policy and 5) intentional infliction of emotional distress. These causes action arise out or require the interpretation of numerous overlapping, intertwined provisions of the CBA governing Plaintiff's employment with Defendant, including but not limited to:

- Section 17(a), requirement that all scheduling and assignment of work, shifts, overtime, promotions, transfers, vacations, and the like be done with respect to seniority;

- Sections 17(c) and (d), effect of voluntary or involuntary transfer on seniority;

- Section 17(f), requirement that Housekeeping room assignments be given according to seniority;

- Section 17(g), provision that an employee's seniority status may be terminated for certain reasons, including being terminated for cause, failing to return on time from a scheduled leave of absence without reasonable excuse, and the employee giving a false reason for obtaining a leave of absence;

- Section 27(a), housekeeping workload requirements;

- Section 27(e), provision for housekeeping staff to "buy" extra rooms in need of cleaning;

- Section 8(b), prohibition on assigning non-tipped, full-time employees (including Plaintiff) less than 8 hours of work per day;

- Section 8(d), assignment of overtime with respect to seniority system;

- Section 6, just cause for discipline and/or termination; and

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

1    •    Section 12, prohibition on individual contracts.

2    e.    Plaintiff's claims and causes of action are inextricably intertwined with, and

3    substantially dependent upon consideration of, the terms and conditions of the CBA. Thus,

4    this District Court has jurisdiction over the Complaint pursuant to Section 301 of the LMRA,

5    29 U.S.C. §185. *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987); *Lingle v. Norge Div. Of*

6    *Magic Chef*, 486 U.S. 399, 405-06 (1988); *Firestone v. Southern California Gas Co.*, 281 F.3d

7    801 (9th Cir. 2002); *McCormick v. AT & T Technologies, Inc.*, 934 F.2d 531, 534-37 (4th Cir.

8    1991); *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 645-46 (9th Cir. 1989);

9    *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048-1049 (9th Cir. 1987).

10    7.    The Complaint establishes that each of Plaintiff's claims involves a federal question

11    since they arise under the laws of the United States, namely the LMRA. Thus, this District Court has

12    jurisdiction over the Complaint pursuant to 28 U.S.C. §1331.

13    8.    The Complaint establishes that each of Plaintiff's claims arise under an Act of

14    Congress regulating commerce, namely the LMRA. Thus, this District Court has jurisdiction over the

15    Complaint pursuant to 28 U.S.C. §1337.

16    9.    To the extent, if any, the Complaint asserts claims that do not arise under the LMRA,

17    this District Court has jurisdiction over such cause(s) of action pursuant to 28 U.S.C. §§1367 and

18    1441(c), and the doctrine of supplemental jurisdiction. *Executive Software N. Am. v. U.S. Dist. Ct.*, 24

19    F.3d 1545 (9th Cir. 1994); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 999 (9th Cir. 1987).

20    10.    This District Court is the judicial district embracing the place where the state court case

21    was brought and is pending, and is the County where the alleged conduct occurred. As such, this

22    District Court has jurisdiction over all the parties. 28 U.S.C. §84(d).

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

1    WHEREFORE, Defendant prays that Plaintiff's Superior Court Action be removed from

2  the San Diego County Superior Court to this District Court.

3

4  DATED: July 23, 2008                    BALLARD ROSENBERG GOLPER & SAVITT LLP

5

6                                          By: _____
                                               MATTHEW T. WAKEFIELD
7                                              ERIC C. SCHWETTMAN
                                               ALEXANDRA M. STEINBERG
8                                          Attorneys for Defendant KSL DC MANAGEMENT,
                                           LLC d/b/a HOTEL DEL CORONADO
9

10    I certify under Fed. R. Civ. P. 11 that the foregoing is true and correct to the best of my

11  knowledge.

12

13  DATED: July 23, 2008                    BALLARD ROSENBERG GOLPER & SAVITT LLP

14

15                                         By: _____
                                               MATTHEW T. WAKEFIELD
16                                             ERIC C. SCHWETTMAN
                                               ALEXANDRA M. STEINBERG
17                                         Attorneys for Defendant KSL DC MANAGEMENT,
                                           LLC d/b/a HOTEL DEL CORONADO
18

19

20

21

22

23

24

25

26

27

28

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

373246.1

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Nelia Mills ("Plaintiff") is a member of UNITE HERE Local 30 ("Union"), a party to a collective bargaining agreement ("CBA") with her former employer, Defendant KSL DC Management, LLC d/b/a Hotel Del Coronado ("Defendant"). Plaintiff was employed by Defendant as a Room Attendant in its Housekeeping Department from December 2003 until March 2007. Plaintiff claims she was wrongfully terminated in violation of the Fair Employment and Housing Act ("FEHA") when her request for a reduced workload (*i.e.* fewer rooms to clean) was refused by Defendant.

Plaintiff's Superior Court Action alleges causes of actions for: 1) disability discrimination / failure to engage in a timely, good faith, interactive process with Plaintiff to determine effective reasonable accommodations; 2) disability discrimination / harassment; 3) disability discrimination / disparate treatment; 4) tortious discharge in violation of public policy and 5) intentional infliction of emotional distress.

This case is properly removed to this District Court on the basis of federal question jurisdiction. The CBA governing Plaintiff's employment with Defendant contains numerous detailed terms, conditions, responsibilities and obligations relating to her employment as a Room Attendant. These overlapping provisions must be interpreted and analyzed in connection with all of her claims herein. Plaintiff claims that she was subjected to disability discrimination based on Defendant's refusal to provide her with her desired accommodation of cleaning fewer rooms per day than other members of her bargaining unit. In order to determine the merits of her claims, and Defendant's defenses thereto, certain CBA provisions, including but not limited to those relating to seniority rights, housekeeping staff room quotas, rights of housekeeping staff to bid for additional work, assignment of overtime, just cause for termination and discipline, prohibitions on individual agreements and the effect of transfers upon seniority must be carefully examined and interpreted both individually and collectively. Thus, her claim for disability discrimination is preempted by Section 301 of the Labor Management Relations Act ("LMRA").

///

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

1    The remainders of Plaintiff's claims are inextricably intertwined with consideration of the

2    terms and conditions of Plaintiff's employment with Defendant pursuant to the CBA. Thus, removal

3    based on federal question jurisdiction is proper.

4    **II.    PLAINTIFF'S COMPLAINT IS COMPLETELY PREEMPTED BY SECTION 301 OF**

5    **THE LMRA**

6    Removal of a state court action pursuant to 28 U.S.C. § 1441(b) is proper if the initial pleading

7    alleges facts sufficient to state a cause of action which could have been brought originally in federal

8    court. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S. Ct.

9    2841, 77 L. Ed. 2d 420 (1983); *Sullivan v. First Affiliated Secur., Inc.*, 813 F.2d 1368, 1371 (9th Cir.

10    1987). Here, removal based on federal question is proper because Plaintiff's claims are entirely

11    preempted by Section 301 of the LMRA.

12    The law is clear that state law claims which are founded on rights created by a CBA are

13    completely preempted by Section 301. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394, 107 S. Ct.

14    2425, 96 L. Ed. 2d 318 (1987). Likewise, state law claims which are substantially dependent on the

15    analysis of a CBA or require reference to or interpretation of a CBA are also preempted by Section

16    301. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 405-06, 108 S. Ct. 1877, 100 L. Ed. 2d 410

17    (1988). A plaintiff "cannot escape the preemptive effect of section 301 by recasting [his/her] contract

18    claims as tort claims." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11, 105 S.Ct. 1904, 85

19    L.Ed.2d 206 (1985) (reversing the Wisconsin Supreme Court, holding that a plaintiff 'cannot escape

20    the preemptive effect of [S]ection 301 by recasting [his/her] contract claims as tort claims"); *Stallcop

21    v. Kaiser Foundation Hosps.*, 820 F.2d 1044, 1048-1049 (9th Cir. 1987) (complaint for violation of

22    state employment laws preempted under Section 301 even though complaint did not mention CBA,

23    where claims nonetheless required interpretation of CBA), citing *Harper v. San Diego Transit Corp.*,

24    764 F.2d 663 (9th Cir. 1985).

25    Courts have held that discrimination or wrongful termination claims arising under the FEHA

26    are preempted when the employee's burden of proof or the employer's defense require interpretation

27    of the CBA. See *Audette v. ILWU*, 195 F.3d 1107, 1113 (9th Cir. 1999) (plaintiffs' FEHA claims

28    were preempted because resolution of such claims "turns on defendants' offer of a 'legitimate

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

1  nondiscriminatory reason' requiring interpretation of the collective bargaining agreement"); *Madison*

2  *v. Motion Picture Set Painters and Sign Writers Local 729*, 132 F.Supp.2d 1244, 1253-54 (C.D. Cal.

3  2000) (plaintiff's discrimination claim under FEHA was preempted where proof of disparate treatment

4  "may necessitate determining whether the CBA imposed [certain] obligations" and the defendant

5  deviated from such requirements, and/or defendant "will undoubtedly assert that it complied with the

6  procedures set forth in the CBA for filing grievances against an employer"); *Department of Fair*

7  *Employment and Housing v. Verizon California Inc.*, 108 Cal. App. 4th 133, 133 Cal. Rptr. 2d 258

8  (2003) (plaintiff's claim under the California Family Rights Act that she was entitled to 12 weeks of

9  family leave with pay without providing verification of injury from a medical specialist was

10  preempted by Section 301 because the claim arose out of and required the interpretation the CBA

11  regarding leave of absence and certification procedures); *Stallcop, supra,* 820 F.2d at 1047 (claim for

12  violation of state discrimination law and intentional infliction of emotional distress completely

13  preempted by LMRA §301, and properly removed because adjudication required interpretation of

14  CBA).

15    In affirming the denial of a motion to remand, the Court explained in *Reece v. Houston*

16  *Lighting & Power Company*, 79 F.3d 485, 487 (5th Cir. 1996), that a discrimination claim is

17  preempted when the employer's justification is based on the CBA. The Court explained:

18    "[The plaintiff's] discrimination claim turns on questions of promotion, seniority, and
     assignment to training programs, all of which are provided for in the CBA. HL&P will
19    undoubtedly rely on the CBA as its legitimate, non-discriminatory reason for Reece's
     treatment. When Reece then attempts to show that HL&P's stated reason is pretextual,
20    the CBA would have to be interpreted because Reece would have to challenge
     HL&P's rights under the CBA. Thus, the interpretation of the CBA 'is made necessary
21    by an employer defense.'"[1]

22    Other employment-related claims also have been held to be preempted when resolution of such

23  claims requires an interpretation of the CBA. *See, e.g., Perugini v. Safeway Stores, Inc.*, 935 F.2d

24  1083, 1089 (9th Cir. 1991) (Court held that appropriateness of defendant's conduct can be determined

---

26    [1]Further, where an accommodation conflicts with a seniority system in a CBA, it is an
     unreasonable accommodation.  *U.S. Airways v. Barnett*, 535 U.S. 391, 402-406 (2002)
27    (accommodation that would otherwise be reasonable is ordinarily unreasonable where it conflicts with
     a seniority system); *Willis v. Pacific Maritime Association*, 244 F.3d 675, 680-681 (2001) (same).

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

1    only by interpreting the CBA as defendant's failure to seek light duty for employee may not be

2    outrageous if defendant had no duty under the CBA to do so); *Shane v. Greyhound Lines, Inc.*, 868

3    F.2d 1057, 1063 (9th Cir. 1989) (where CBA required employer to notify employees of intended

4    disciplinary action in writing, Court held that defamation claim and "any claim based on the discharge

5    notification [are], therefore, 'inextricably intertwined' with the CBA"); *Young v. Anthony's Fish*

6    *Grottos Inc.*, 830 F.2d 993, 999 (9th Cir. 1987) (preemption found where just cause for termination

7    provision required interpretation of CBA, and also where no proper public policy basis for termination

8    was articulated); *Hollinquest v. St. Francis Medical Center*, 827 F.Supp. 723 (C.D. Cal. 1994) (where

9    there has been a failure to implicate any public policy that would support a claim for wrongful

10   termination in violation of public policy, the resolution of the claim requires interpretation of the CBA

11   and is thus preempted); *Cook v. Lindsay Olive Growers*, 911 F.2d 233, 239 (1990) (claim for

12   intentional infliction of emotional distress preempted where the CBA covers the conduct at issue

13   claimed to be extreme and outrageous).

14        Here, Plaintiff was a Room Attendant on Defendant's housekeeping staff. The gravamen of

15   her Complaint is that Defendant refused her requested accommodation of cleaning just ten rooms per

16   day instead of the fourteen-room "credit" (as calculated by the terms of the CBA) quota, and that this

17   refusal constituted disability discrimination, wrongful termination, and intentional infliction of

18   emotional distress. *See, e.g.*, Complaint ¶¶ 9, 17, 18. (Exhibit "1").

19        In order to properly evaluate Plaintiff's claim of discrimination, related claims, and

20   Defendant's defenses thereto[2], several provisions of the CBA must be analyzed and interpreted. For

21

22   _____

     [2]Plaintiff's claims for harassment, failure to accommodate, failure to engage in the interactive
23   process, wrongful termination and intentional infliction of emotional distress are merely derivatives of
     Plaintiff's primary claim for disability discrimination. As such, these claims are likewise preempted
24   by Section 301. *Bloom v. Universal City Studios, Inc.*, 734 F. Supp. 1553, 1561 (C.D. Cal. 1990),
     *aff'd* 933 F.2d 1013 (9th Cir. 1991); *Stikes v. Chevron USA, Inc.*, 914 F.2d 1265, 1269 (9th Cir. 1990),
25   *cert. denied*, 500 U.S. 917, 111 S. Ct. 2015, 114 L.Ed. 2d 101 (1991), *overruled in part on other
     grounds, Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001) (where "gravamen
26   of plaintiff's complaint is preempted," the remaining "parasitic" or "peripheral" claims are preempted
     as well); *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, (8th Cir. 1989) (loss of consortium claim is
27   preempted by Section 301 to the extent it is derived from claims that are preempted); *Young, supra*,
     830 F.2d at 1001 ("[a]s resolution of her [fraud and negligent misrepresentation] claims would
28   substantially depend on interpretation of the CBA, the claims are preempted [by Section 301]").

1  example, whether Plaintiff's requested accommodation would require preferential treatment in the

2  assignment of work, thus conflicting with the seniority provisions of Sections 8(d) and 17(a) and (f),

3  requires interpretation of the contract. Section 8(d) sets forth the procedures by which overtime is

4  assigned, with specific reference to seniority. Section 17(a) provides generally for assignment of all

5  work by seniority, and 17(f) provides specifically for housekeeping room assignments. The necessity

6  for interpreting these various provisions to determine a conflict with the seniority system is especially

7  poignant when they are taken in conjunction with other provisions, such as Section 27(e) which

8  provides a method by which housekeeping staff may "buy" an extra room for additional pay or be

9  assigned to other work without additional pay. Whether this program can be administered consistently

10 with Plaintiff's requested accommodation, and whether it conflicts with the seniority provisions

11 elsewhere in the contract, again requires interpretation of the contractual provisions. (Exhibit "3").

12      Further, Section 17(g) provides the employee's seniority status may be terminated where the

13 employee is terminated for cause. Section 6(a) sets forth numerous examples of just cause for

14 termination, but expressly does not limit itself to those reasons. Whether Plaintiff was terminated for

15 just cause, and thus may lose her seniority, must take into consideration whether Plaintiff's desired

16 accommodation was unreasonable under the CBA. *Id.*

17      Additionally, Plaintiff's Complaint explicitly states that she was denied "contractual benefits"

18 which Plaintiff depended on for her support. Complaint ¶ 16. *Id.* This *alone* is enough to support

19 removal to District Court under the LMRA Section 301. *Allis-Chalmers Corp., supra*, 471 U.S. at

20 210-211 (state law claims alleging a breach of a CBA are completely preempted by Section 301 of the

21 LMRA). Even if the "contractual benefits" allegation was not included, the thrust of Plaintiff's

22 complaint remains unchanged. The CBA contains many intertwined provisions that bear upon

23 contractual benefits such as how much an employee may earn, how work is provided to all employees

24 entitled to such assignments, and issues relating to and based on seniority including but not limited to:

25      •    the ability to "buy a room" (Section 27(e));

26      •    how housekeeping work in general is assigned (Section 17(f)).

27      •    the potential loss of seniority upon transfer (Sections 17(c) and (d)); and

28      •    the assignment of overtime based upon seniority (Section 8(d). (Exhibit "3").

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

1    Thus, it is abundantly clear that the analysis of all of Plaintiff's claims requires a determination

2 of whether Plaintiff's requested accommodation was unreasonable, reasonable, consistent with the

3 CBA or inconsistent with the CBA[3]. Because the answer to that question requires interpretation of the

4 CBA, it is completely preempted and the Complaint is properly removed to this Court.

5 **III.    THIS COURT POSSESSES SUPPLEMENTAL JURISDICTION OVER ANY NON-**

6 **PREEMPTED CLAIM**

7    To the extent the Court determines that any of the state law claims alleged in the Complaint do

8 not arise under the LMRA, all of the claims are based on the same alleged facts and circumstances as

9 the other claims which do arise under the LMRA. Thus the Court has supplemental jurisdiction over

10 any non-preempted state law claims. 28 U.S.C. §§ 1367(a), 1441(c); *Executive Software N. Am. v.*

11 *U.S. Dist. Ct.*, 24 F.3d 1545 (9th Cir. 1994); *Young v. Anthony's Fish Grottos Inc.*, 830 F.2d 993, 999

12 (9th Cir. 1987) (Ninth Circuit found that the "district court could properly exercise [supplemental]

13 jurisdiction over the tort claims based on their *close relation* with the section 301 claim, the *economy*

14 *of hearing all claims arising out of the discharge in the same action*, and the significant federal

15 interest in deciding the preemption defense to the tort claims") (Emphasis added).

16 **IV.    CONCLUSION**

17    For all the foregoing reasons, Defendant urges that Plaintiff's Superior Court Action is

18 properly removable to this District Court.

19

20 DATED: July 23, 2008            BALLARD ROSENBERG GOLPER & SAVITT LLP

21

22                    By: _____
                              MATTHEW T. WAKEFIELD
23                            ERIC C. SCHWETTMAN
                              ALEXANDRA M. STEINBERG
24                        Attorneys for Defendant
                          KSL DC MANAGEMENT, LLC d/b/a HOTEL DEL
25                        CORONADO

26 _____

27    [3]Indeed, at a *minimum*, Sections 6, 8, 12, 17 and 27 of the CBA will have to be analyzed
   herein. (Exhibit "3").
28

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

**EXHIBIT 1**

**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100

FILED
CIVIL BUSINESS CENTER
*(FOR COURT USE ONLY)*
*(SOLO PARA USO DE LA CORTE)*

08 MAR -7 PM 2:57

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

*Received 6/24/08 12:01 pm* Blank

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
KSL DC MANAGEMENT LLC, DBA HOTEL DEL CORONADO;
AND DOES 1 TO 50

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**
NELIA MILLS

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): SUPERIOR COURT OF CALIFORNIA<br>330 W. Broadway, San Diego CA 92101 | CASE NUMBER:<br>(Número del Caso):<br>37-2008-00079467-CU-WT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Timothy L. Brictson, BRICTSON & COHN, 2214 Fifth Avenue, San Diego CA 92101 619.296.9387

| | | | |
|---|---|---|---|
| DATE:<br>(Fecha) MAR 0 7 2008 | Clerk, by<br>(Secretario) | C. Beutler | , Deputy<br>(Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

    under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other (specify):
4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

EXHIBIT ____1____

LAW OFFICE OF BRICTSON & COHN
Timothy L. Brictson, SBN 174907
2214 Fifth Avenue
San Diego, CA 92101
Telephone: (619) 296-9387
Facsimile: (619) 232-0583

Attorneys for Plaintiff
NELIA MILLS

FILED
CIVIL BUSINESS OFFICE 7
CENTRAL DIVISION

08 MAR -7 PM 2: 57

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY. CA

C

### SUPERIOR COURT OF CALIFORNIA

### COUNTY OF SAN DIEGO

NELIA MILLS,

        Plaintiff,

vs.

KSL DC MANAGEMENT LLC, DBA HOTEL
DEL CORONADO; AND DOES 1 TO 50.

        Defendants

Case No.: 37-2008-0007957-CU-WT-CTL

COMPLAINT FOR:
DISABILITY DISCRIMINATION [Cal. Gov.
Code §12940(n)]; DISABILITY
DISCRIMINATION [Cal. Gov. Code
§12940(a), et. seq.]; DISABILITY
DISCRIMINATION [Cal. Gov. Code
§12940(a), et. seq.]; TORTIOUS DISCHARGE
IN VIOLATION OF PUBLIC POLICY;
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS.

COMES NOW Plaintiff, NELIA MILLS and complains and alleges as follows:

### FACTS COMMON TO ALL CAUSES OF ACTION

1)  Defendant, KSL DC MANAGEMENT LLC, DBA HOTEL DEL CORONADO (hereinafter

"HOTEL DEL"), is, and at all times herein mentioned was, a city duly organized and existing

under the laws of the State of California.

2)  The true names and capacities of Defendants named herein as DOES 1 through 50, inclusive,

whether individual, corporate, associate, or otherwise, are unknown to Plaintiff, and thus sued by

such fictitious names pursuant to Cal. Code Civ. Proc. § 474.  Plaintiff is informed and believes

COMPLAINT - 1

00012

that DOE Defendants are California residents. Plaintiff will amend this Complaint to show true names in these capacities when they have been determined.

3) Plaintiff is informed and believes that all times herein the individual actors were agents, servants, and employees of named Defendants, and were acting within the course and scope of their authority as agents, servants, and employees with the permission and consent of Defendants.

4) Plaintiff is, and at all relevant times was, an adult residing in San Diego County, California.

5) At all relevant times herein, Plaintiff was an employee of Defendant HOTEL DEL.

6) At all relevant times Plaintiff had been a long-time, permanent employee of Defendant HOTEL DEL, working as a Housekeeper.

7) On our about July 8, 2004 Plaintiff sustained injury which resulted in a permanent disability that limits a major life activity.

8) As a result, Plaintiff suffered a disability. Plaintiff's condition constituted a disability that limits a major life activity, as defined by section 12926 of the California Government Code, Cal. Gov. Code §12926, and entitled Plaintiff to protection under the California Fair Employment and Housing Act. Cal. Gov. Code §12900, *et. seq.*

9) Plaintiff's disability limited her to cleaning fewer rooms than she had been prior to her injury. Her doctor limited her to working no more than 10 rooms per day.

10) Despite that, Plaintiff was able to perform the essential functions of her position, with or without reasonable accommodation.

11) Upon receipt of information that Plaintiff was an individual with a disability, Defendant and its agents acted outrageously, maliciously, and with the specific intent to, and/or with reckless disregard of the probability of, causing Plaintiff severe emotional harm.

COMPLAINT - 2

12) Defendant's and its agent's position over Plaintiff, and Defendant's relationship with Plaintiff, created a situation wherein Defendant's conduct had a particularly severe impact on Plaintiff, which Defendant knew, or reasonably should have known, in advance of that conduct. From the beginning of 2007, Defendant told Plaintiff her job was in jeopardy because of her disability.

13) Defendant through its agents abused a position of authority over Plaintiff, and brokered upon confidential information they had obtained through that position of authority.

14) Plaintiff continued to perform her duties despite these hurdles.

15) Moreover, Plaintiff was a long-term employee of Defendant.

16) Nevertheless, Defendant made a deliberate decision to wrongfully withhold contractual benefits which Plaintiff depended upon for support, without reasonable explanation or due process in order to further abuse Plaintiff.

17) Prior to March 8, 2007, Plaintiff made a demand for reasonable accommodation for her disability.

18) However, Defendant refused to allow Plaintiff to perform her work, pointing to her disability. Defendant cut-off Plaintiff's health benefits and placed her into the "COBRA" plan. Defendant also forced Plaintiff to commence Vocational Rehabilitation to find a different job.

19) On or about March 8, 2007, Defendant indicated that they would look no further for accommodations for Plaintiff. Plaintiff is informed and believes that her employment was terminated on that date.

20) Plaintiff timely filed a Complaint with the Department of Fair Employment and Housing ("DFEH") complaining of the wrongful conduct described herein.

COMPLAINT - 3

21) The DFEH mailed a Right to Sue Notice to Plaintiff, less than one year from the filing of this complaint.

### FIRST CAUSE OF ACTION
### DISABILITY DISCRIMINATION
### FAILURE TO ENGAGE IN A TIMELY, GOOD FAITH, INTERACTIVE PROCESS
### WITH THE PLAINTIFF TO DETERMINE EFFECTIVE REASONABLE
### ACCOMMODATIONS
### Cal. Gov. Code §12940 (n)

22) The allegations set forth in the above and below paragraphs are re-alleged and incorporated herein by reference.

23)    At all times herein mentioned, Government Code § 12900, *et seq.*, were in full force and effect and were binding upon Defendant. This section requires Defendant to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or know medical condition.

24) Plaintiff requested that Defendant engage in a timely, good faith, interactive process to explore Plaintiff's capacities to return to work with Defendant, essential work functions, and reasonable accommodations or lack there of.

25) Within the time provided by law, Plaintiff filed a complaint with the California Department of Fair Employment and Housing and received a right to sue letter.

26) Plaintiff requested such accommodation and exploration, but Defendant refused to do so in good faith. Plaintiff maintains that Defendant had already decided that Plaintiff would not be allowed to return to work prior to meeting with Plaintiff. Moreover, Defendant failed to fulfill its obligations to Plaintiff during or after the meeting. Defendant refused to consider any of the points or statements made by Plaintiff or Plaintiff's representative regarding the provision of reasonable accommodation that would allow Plaintiff to perform the essential job functions of any job with HOTEL DEL.

COMPLAINT - 4

27)   As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, she continues to sustain substantial losses in earnings and other employment benefits.

28)   As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum accruing to proof.

29) Defendant's conduct was malicious, oppressive, and done with reckless disregard of Plaintiff's rights and the harm that was reasonably foreseeable to occur to Plaintiff. As such, an award of punitive damages is warranted.

30)  Plaintiff has incurred and continues to incur legal expense and attorneys' fees. The total amount of those attorneys' fees and expenses are currently unknown, and Plaintiff prays leave of court to amend this complaint when said amounts are fully known.

31) WHEREFORE, Plaintiff requests relief as hereinafter provided.

## SECOND CAUSE OF ACTION
## DISABILITY DISCRIMINATION / HARASSMENT
## GOVERNMENT CODE § 12940(a), et seq.

32) The allegations set forth in the above and below paragraphs are re-alleged and incorporated herein by reference.

33)   At all times herein mentioned, Government Code § 12940 was in full force and effect and were binding upon Defendant. This section requires Defendants to refrain from discrimination against any employee on the basis of an actual or perceived disability. Within the time provided by law, Plaintiff filed a complaint with the California Department of Fair Employment and Housing and received a right to sue letter.

34)  Defendant has, on an ongoing and continuing basis, harassed and discriminated against Plaintiff due to Plaintiff's actual and/or perceived disability, including but not limited to, not

COMPLAINT - 5

00016

allowing Plaintiff to work, creating false emergencies, artificial deadlines, mocking Plaintiff's physical condition, attempting to publicly embarrass Plaintiff, and additional actions.

35) As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, she continues to sustain substantial losses in earnings and other employment benefits.

36) As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to her damage in a sum accruing to proof.

37) Defendant's conduct was malicious, oppressive, and done with reckless disregard of Plaintiff's rights and the harm that was reasonably foreseeable to occur to Plaintiff. As such, an award of punitive damages is warranted.

38) Plaintiff has incurred and continues to incur legal expense and attorneys' fees. The total amount of those attorneys' fees and expenses are currently unknown, and Plaintiff prays leave of court to amend this complaint when said amounts are fully known.

39) WHEREFORE, Plaintiff requests relief as hereinafter provided.

### THIRD CAUSE OF ACTION
### DISABILITY DISCRIMINATION / DISPARATE TREATMENT
### GOVERNMENT CODE § 12940(a), et seq.

40) The allegations set forth in the above and below paragraphs are re-alleged and incorporated herein by reference.

41) At all times herein mentioned, Government Code § 12940 was in full force and effect and were binding upon Defendant. This section requires Defendants to refrain from discrimination against any employee on the basis of an actual or perceived disability. Within the time provided by law, Plaintiff filed a complaint with the California Department of Fair Employment and Housing and received a right to sue letter.

42) Defendant has, on an ongoing and continuing basis, harassed and discriminated against Plaintiff due to Plaintiff's actual and/or perceived disability, including but not limited to, not

allowing Plaintiff to work, creating false emergencies, artificial deadlines, mocking Plaintiff's physical condition, attempting to publicly embarrass Plaintiff, treating Plaintiff differently than other employees due to her disability, and additional wrongful actions.

43)    As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, she continues to sustain substantial losses in earnings and other employment benefits.

44)    As a proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, she has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum accruing to proof.

45) Defendant's conduct was malicious, oppressive, and done with reckless disregard of Plaintiff's rights and the harm that was reasonably foreseeable to occur to Plaintiff.  As such, an award of punitive damages is warranted.

46)  Plaintiff has incurred and continues to incur legal expense and attorneys' fees.  The total amount of those attorneys' fees and expenses are currently unknown, and Plaintiff prays leave of court to amend this complaint when said amounts are fully known.

47) WHEREFORE, Plaintiff requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION
### TORTIOUS DISCHARGE IN VIOLATION OF PUBLIC POLICY: DISABILITY DISCRIMINATION, CONSTITUTION OF CALIFORNIA, ARTICLE I § 8.

48) The allegations set forth in the above and below paragraphs are re-alleged and incorporated herein by reference.

49) At all times herein mention, Constitution Of California, Article I § 8 was in full force and effect and was binding upon Defendants.  This section requires Defendants to refrain from discrimination against any employee on the basis of a disability.

50) Defendants terminated Plaintiff's employment in part due to Plaintiff's disability.

COMPLAINT - 7

51) As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, he continues to sustain substantial losses in earnings and other employment benefits.

52) As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, he has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, al to his damage in a sum accruing to proof.

53) Defendant's conduct was malicious, oppressive, and done with reckless disregard of Plaintiff's rights and the harm that was reasonably foreseeable to occur to Plaintiff. As such, an award of punitive damages is warranted.

54) Plaintiff has incurred and continues to incur legal expense and attorneys' fees. The total amount of the those attorneys fees and expenses are currently unknown, and Plaintiff prays leave of court to amend this complaint when said amounts are fully known.

55) WHEREFORE, Plaintiff requests relief as hereinafter provided.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

56) Plaintiff hereby incorporates by reference all above and below paragraphs of this Complaint as if fully set forth herein.

57) Defendants, acting on their own and through agents and employees, engaged in the acts heretofore described deliberately and intentionally in order to cause Plaintiff severe emotional distress, alternatively, Plaintiff alleges that such conduct was done in reckless disregard of the probability of said conduct causing Plaintiff severe emotional distress.

58) The foregoing conduct did, in fact, cause Plaintiff to suffer extreme and severe emotional distress. As a proximate result of said conduct, Plaintiff suffered embarrassment, anxiety, humiliation, and emotional distress, and will continue to suffer said emotional distress in an amount in excess of the minimum jurisdiction of this Court, the precise amount of which will be proven at the time of trial.

59) Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive

COMPLAINT - 8

amounting to malice and in conscious disregard of Plaintiff's rights.  Because the acts taken towards Plaintiff were carried out by managerial employees acting in a despicable, deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiff, Plaintiff is entitled to recover punitive damages from Defendants in an amount according to proof.

60) WHEREFORE, Plaintiff requests relief as hereinafter provided.

## PRAYER

61)  WHEREFORE, Plaintiff prays for relief against Defendants, and each of them as follows:

a) For special compensatory damages, including lost wages, lost employee benefits, bonuses, vacation benefits, medical treatment, mental and emotional distress, and other special and general damages according to proof, for All Causes of Action;

b) For general compensatory damages, including lost wages, lost employee benefits, bonuses, vacation benefits, mental and emotional distress, and other special and general damages according to proof, for All Causes of Action;

c) For an award to Plaintiff of costs of suit incurred hereon on all causes of action;

d) For an award to Plaintiff of attorneys' fees and costs on All Causes Of Action;

e) For an award of Interest, including prejudgment interest, at the legal rate;

f) For injunctive relief that Defendant reemploy Plaintiff;

g) For an award of punitive damages against all Defendants on All Causes of Action; &

h) For an award to Plaintiff of such other and further relief as this Court deems just and proper.

Dated this 7th day of March , 2008

By: 

LAW OFFICE OF BRICTSON
& COHN
Timothy L. Brictson
Attorneys for Plaintiff
NELIA MILLS

COMPLAINT - 9

**EXHIBIT 2**

(SPACE BELOW FOR FILING STAMP ONLY)

1  MATTHEW T. WAKEFIELD, SBN 175040
   ERIC C. SCHWETTMANN, SBN 188784
2  ALEXANDRA M. STEINBERG, SBN 227427
   BALLARD, ROSENBERG, GOLPER & SAVITT LLP
3  10 Universal City Plaza, Sixteenth Floor
   Universal City, CA 91608-1097
4  Telephone:    818-508-3700
   Facsimile:    818-506-4827

5

6  Attorneys for Defendant
   KSL DC MANAGEMENT, LLC
   d/b/a HOTEL DEL CORONADO
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SAN DIEGO

10

11 NELIA MILLS,                          CASE NO. 37-2008-00079467-CU-WT-CTL
                                         *[Honorable Ronald L. Styn / Dept 62]*
12            Plaintiff,
                                         ANSWER OF DEFENDANT KSL DC
13    vs.                                MANAGEMENT, LLC d/b/a HOTEL
                                         DEL CORONADO TO PLAINTIFF'S
14 KSL DC MANAGEMENT LLC, DBA            UNVERIFIED COMPLAINT
   HOTEL DEL CORONADO;
15 and DOES 1 to 50, inclusive,          Complaint Filed:    March 7, 2008

16            Defendants.                 **BY FAX**

17

18

19     Defendant KSL DC MANAGEMENT, LLC d/b/a HOTEL DEL CORONADO

20 ("Defendant"), for itself and no other Defendant, hereby responds to the Complaint filed by Plaintiff

21 Nelia Mills ("Plaintiff") and admits, denies, and alleges as follows:

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

                                  -1-
                    Defendant's Answer To Plaintiff's Complaint

372789.1

EXHIBIT    2

00021

**BALLARD ROSENBERG GOLPER & SAVITT LLP**
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

## GENERAL DENIAL

1.    Pursuant to Cal. Code Civ. Proc. § 431.30(d), Defendant denies, generally and specifically, each and every allegation in Plaintiff's Complaint, and further denies that Plaintiff is entitled to the relief requested, or that Plaintiff has been damaged in any amount, or at all.

## FIRST AFFIRMATIVE DEFENSE

### (Failure To State Facts)

2.    Plaintiff's Complaint fails to state facts sufficient to constitute a cause of action or to state a claim upon which relief can be granted against Defendant.

## SECOND AFFIRMATIVE DEFENSE

### (Exhaustion Of Grievance And Arbitration Procedures)

3.    To the extent that Plaintiff's Complaint arises out of and/or requires the interpretation of a collective bargaining agreement, any recovery therefor is barred by Plaintiff's failure to exhaust prerequisite administrative remedies, including but not limited to, the grievance and arbitration procedures contained in any applicable collective bargaining agreement.

## THIRD AFFIRMATIVE DEFENSE

### (Union At Fault)

4.    To the extent that Plaintiff's Complaint arises out of and/or requires the interpretation of a collective bargaining agreement, any recovery therefor is barred on the grounds that any damages Plaintiff has allegedly suffered are a result of the conduct of Plaintiff's union, and as such, the union is solely responsible for any resulting damage.

## FOURTH AFFIRMATIVE DEFENSE

### (LMRA Preemption)

5.    To the extent that Plaintiff's Complaint arises out of and/or requires the interpretation of a collective bargaining agreement, any recovery therefor is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

///
///
///

2

372789.1

00022

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

1

## FIFTH AFFIRMATIVE DEFENSE

2

### (NLRA Preemption)

3       6.      Plaintiff's Complaint is barred by §§ 7 and 8 of the National Labor Relations Act, as

4   amended, 29 U.S.C. §§ 157, 158, which provides the exclusive remedy for Plaintiff's alleged

5   damages.

6

## SIXTH AFFIRMATIVE DEFENSE

7

### (No Duty Of Fair Representation)

8       7.      Plaintiff's Complaint is barred because Plaintiff's union did not breach its duty of fair

9   representation.

10

## SEVENTH AFFIRMATIVE DEFENSE

11

### (Conformity With Collective Bargaining Agreement)

12       8.      With regard to all matters alleged in Plaintiff's Complaint, Defendant acted in good

13   faith, and in conformity with the collective bargaining agreement governing Plaintiff's employment

14   with Defendant.

15

## EIGHTH AFFIRMATIVE DEFENSE

16

### (Consent)

17       9.      Plaintiff's Complaint is barred because Plaintiff and/or her authorized exclusive

18   bargaining representative consented to Defendant's conduct alleged in the Complaint.

19

## NINTH AFFIRMATIVE DEFENSE

20

### (Administrative Remedies)

21       10.      Plaintiff's Complaint is barred because Plaintiff failed to exhaust prerequisite

22   administrative remedies, including, without limitation, those under Cal. Gov't. Code §§ 12960

23   and 12965.

24   ///

25   ///

26   ///

27   ///

28   ///

3

372789.1

00023

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

## TENTH AFFIRMATIVE DEFENSE

### (Statute Of Limitations)

11.    Any recovery on Plaintiff's Complaint is barred by the applicable statute of limitations including, without limitation, the one-year statute of limitations of Cal. Code Civ. Proc. § 340(3) and Cal. Gov't. Code §§ 12960 and 12965, and the six-month statute of limitations of 29 U.S.C. § 160(b).

## ELEVENTH AFFIRMATIVE DEFENSE

### (Estoppel)

12.    Plaintiff's Complaint is barred by the doctrine of estoppel.

## TWELFTH AFFIRMATIVE DEFENSE

### (Laches)

13.    Upon information and belief, Plaintiff's action is barred by the doctrine of laches.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

14.    Plaintiff's Complaint is barred by the doctrine of waiver.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

15.    Plaintiff has unclean hands with respect to the matters alleged in the Complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Workers' Compensation Act Preemption)

16.    Plaintiff's Complaint is barred to the extent Plaintiff seeks any form of relief for which the California Workers' Compensation Act, Cal. Labor Code § 132a and Cal. Labor Code § 3600 *et seq.* provides the exclusive remedy.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Failure To Mitigate)

17.    Plaintiff has failed to mitigate any damages she alleges she has suffered. Defendant asserts that to the extent any damages would or should have been mitigated, such sums should be deducted from the alleged damages.

4

372789.1

00024

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Contributory Or Comparative Fault)**

18.    Any recovery on Plaintiff's Complaint is barred in whole or in part by Plaintiff's own contributory and/or comparative fault.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Apportionment)**

19.    The liability of Defendant and responsible parties named or unnamed, if any, for any injury, damage, or loss sustained by Plaintiff should be apportioned according to their respective degree of fault, and the liability if any, of Defendant should be reduced accordingly.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Percentage Of Fault)**

20.    Liability for the amount of non-economic damages, if any, should be allocated to Defendant in direct proportion to its percentage of fault, if any, pursuant to Cal. Civil Code § 1431 et seq.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(No Proximate Cause)**

21.    While denying that Plaintiff has suffered any loss or damages, any loss or damage actually sustained by Plaintiff was the proximate result of the conduct of Plaintiff or persons or entities other than this answering Defendant.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

22.    Any recovery on Plaintiff's Complaint is barred to the extent that the conduct alleged by Plaintiff was outside the course and scope of employment of any of Plaintiff's co-workers alleged to have committed said conduct.

///

///

///

///

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

5

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Violation of Labor Code)

23.    Plaintiff's Complaint and each and every cause of action alleged therein is barred by *Labor Code* §§ 2854, 2856, 2857 and 2922 in that Plaintiff failed to use ordinary care and diligence in the performance of her duties and failed to substantially comply with the reasonable directions of her employer.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (No Discrimination)

24.    Defendant did not discriminate against Plaintiff on the basis of alleged disability, perceived disability, or on any other unlawful basis, and any and all decisions made by Defendant regarding Plaintiff's employment were based upon reasonable factors other than alleged disability and/or perceived disability.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Non-Harassing Conduct)

25.    Any conduct alleged by Plaintiff to be improper towards her was motivated by factors personal to her rather than by any severe or pervasive discriminatory conduct.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Legitimate, Non-Discriminatory Actions)

26.    Any recovery on Plaintiff's Complaint is barred in whole or in part because every action taken with respect to Plaintiff was undertaken for legitimate, non-discriminatory reasons.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### [Not Qualified]

27.    Plaintiff was not a qualified individual with a disability or medical condition at any time relevant to this action.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### [Reasonable Accommodation]

28.    To the extent Plaintiff has an alleged disability or medical condition, Defendant has taken all appropriate steps to reasonably accommodate such disability or medical condition.

DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT

372789.1                                                                                    00026

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### [Undue Hardship]

29.    To the extent that Plaintiff requested any accommodation based on an alleged disability or medical condition, Plaintiff's request was unreasonable and constituted an undue hardship to this answering Defendant.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### [Inability to Perform]

30.    To the extent Plaintiff has an alleged disability or medical condition, Plaintiff was unable to perform her essential duties even with reasonable accommodations, or in a manner that would not endanger her health or safety, or the health or safety of others.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Managerial Discretion)

31.    Any and all conduct of which Plaintiff complains was a just and proper exercise of management discretion, undertaken for fair and honest reasons and regulated by good faith under the circumstances that existed.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Good Faith)

32.    All actions taken by Defendant with respect to Plaintiff, if any, were, at all relevant times, taken in good faith without any intent to discriminate against or harass Plaintiff in any manner prohibited by the FEHA, or any other law or public policy.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Good Cause)

33.    Any recovery on Plaintiff's Complaint is barred in whole or in part because every action taken with respect to Plaintiff was undertaken with good cause, was taken in good faith, or was taken with a good faith belief that good cause existed for any of the disputed conduct or actions taken.

///

///

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

7

372789.1                                                                                    00027

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

34.    Defendant believes that discovery will reveal that any recovery on Plaintiff's Complaint is barred by the after-acquired evidence doctrine.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### [No Breach of Duty]

35.    Defendant did not directly or indirectly perform or fail to perform any acts which constitute a violation of any rights, if any, of Plaintiff, or a violation of any duty or obligation, if any, owed to Plaintiff.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### [No Punitive Damages]

36.    Plaintiff's Complaint fails to state facts sufficient to support a cause of action upon which damages for punitive damages may be awarded.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### [No Improper Purpose]

37.    Defendant acted in good faith, without malice, spite, conscious, reckless, or negligent disregard of Plaintiff's legal and equitable rights, if any, and without improper purpose or ill will of any kind.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### [Lack of Authorization or Ratification]

38.    Plaintiff is not entitled to recover the punitive damages alleged in her Complaint because Defendant did not authorize or ratify the acts alleged in the Complaint.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### [Constitutional Bar on Punitive Damages]

39.    Plaintiff is not entitled to recover punitive damages as an award of punitive damages would violate Defendant's rights under the Constitutions of the United States and the State of California, including but not limited to Defendant's rights to procedural and substantive due process, and protection from excessive fines.

8

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### [Lack of Advance Knowledge and Conscious Disregard]

40.    Plaintiff is not entitled to recover the punitive damages alleged in her Complaint because Defendant did not have advance knowledge of the unfitness of any person as alleged, and in any event, did not employ such persons in conscious disregard of Plaintiff's rights.

## FORTIETH AFFIRMATIVE DEFENSE

### [Lack of Oppression, Fraud or Malice]

41.    Any acts, or omissions to act, by Defendant do not constitute oppression, fraud or malice as such terms are defined by *Civil Code* § 3294.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### [Attorneys' Fees]

42.    Defendant has engaged attorneys to represent it in connection with Plaintiff's frivolous, unfounded, and unreasonable action, and upon prevailing herein, Defendant shall be entitled to an award of reasonable attorneys' fees and costs pursuant to *Government Code* § 12965 and/or *Code of Civil Procedure* § 128.7.

**WHEREFORE**, Defendant prays as follows:

1.    That Plaintiff take nothing by way of her Complaint, and that it be dismissed in its entirety;

2.    That Defendant be awarded its costs of suit and reasonable attorney's fees incurred herein; and

3.    That the Court award such other and further relief as it deems just and proper.

DATED: July 22, 2008

BALLARD, ROSENBERG, GOLPER & SAVITT LLP
MATTHEW T. WAKEFIELD
ERIC C. SCHWETTMANN
ALEXANDRA M. STEINBERG

By: _____
ERIC C. SCHWETTMANN
Attorney for Defendants
KSL DC MANAGEMENT, LLC
d/b/a HOTEL DEL CORONADO

9

372789.1

00029

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

**PROOF OF SERVICE**

1

2    I am a citizen of the United States, and am employed in the County of Los Angeles in the office of a member of the bar of this Court at whose directions this service was made. I am over the age of 18, and not a party to the within action. My business address is Ballard, Rosenberg, Golper & Savitt LLP, 10 Universal City Plaza, Sixteenth Floor, Universal City, California 91608-1097.

3

4

5    On July 23, 2008, I served the foregoing document described as: **ANSWER OF DEFENDANT KSL DC MANAGEMENT, LLC d/b/a HOTEL DEL CORONADO TO PLAINTIFF'S UNVERIFIED COMPLAINT** on the interested parties in this action, by placing a true copy thereof in a sealed envelope addressed as follows:

6

7    Timothy L. Brictson, Esq.
     **Law Office of Brictson & Cohn**
8    2214 Fifth Avenue
     San Diego, California 92101
9

10   _____    **VIA FACSIMILE** @ 619 / 232-0583; and

11    X      **(BY FEDEX)** and personally placing such envelope in a designated Federal Express Pick-Up Box located at 10 Universal City Plaza, Universal City, California 91608.

12

13   _____    **(BY MAIL)** and personally placing such envelope with postage fully prepaid for collection and mailing on the above-referenced date following the ordinary business practices of this office. I am readily familiar with our office's practice for collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, correspondence, including said envelope, will be deposited with the United States Postal Service at Universal City on the above-referenced date.

14

15

16

17   _____    **(BY PERSONAL SERVICE)** I caused such document(s) to be delivered by hand to the above-addressee(s).

18

19    I declare under penalty of perjury that the foregoing is true and correct under the laws of the State of California. Executed on July 23, 2008, at Universal City, California.

20

21

22                                          DARLA W. SALTER

23

24

25

26

27

28

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**

372789.1                                                    00030

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 UNIVERSAL CITY PLAZA, SIXTEENTH FLOOR
UNIVERSAL CITY, CA 91608-1097

**EXHIBIT 3**

*Hotel Del Coronado*

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN

## HOTEL DEL CORONADO

## AND

## UNITE HERE LOCAL 30

TEL 619 435 6611
WWW.HOTELDEL.COM

**2005-2009**

EXHIBIT ___3___

1500 ORANGE AVENUE
CORONADO CALIFORNIA 92118

00031

This agreement is effective as of July 1, 2005, between KSL DC MANAGEMENT, LLC, d/b/a HOTEL DEL CORONADO ("Employer") and UNITE HERE LOCAL 30 ("Union"), who agree as follows:

## SECTION 1
## PURPOSE

It is the purpose and intent of the parties hereto that this Agreement govern the economic relationships between the Employer and the Union, and to set forth rates of pay, hours of work, and other conditions of employment to be observed between the parties. Employer and Union recognize their mutual interest and obligation in maintaining friendly cooperation.

## SECTION 2
## UNION RECOGNITION, PROBATIONARY EMPLOYEES

(a)    Employer recognizes Union as the sole collective bargaining agent for all Employees now hereafter employed by Employer in the schedule of "Employee Classifications and Minimum Wage Scales" attached hereto as Schedule "A" and incorporated herein by reference ("Employees") for the purpose of collective bargaining with respect to minimum rates of pay, hours or work, and other conditions of employment. Classifications not listed in Schedule "A" are excluded from this Agreement. Employer shall not create new non-union job classifications for Employees performing the same work as is performed by members of the bargaining unit as of the date of this Agreement, nor shall Employer transfer any bargaining unit Employee into a non-union classification if the Employee in the new position continues to perform the same work as when the Employee was in the bargaining unit classification.

(b)    New Employees shall be probationary Employees until they have worked for Employer for at least sixty (60) working days from the first day of hire, but in no event longer than ninety (90) calendar days. During the probationary period, an Employee may be disciplined, laid off or terminated at the sole discretion of Employer. When an Employee has completed that probationary period, the Employee shall receive full seniority credit from date of hire.

## SECTION 3
## UNION SECURITY

(a)    As a condition of employment, all bargaining unit Employees must become members of the Union or tender appropriate fees to the Union on the thirty-first (31st) day of employment and remain in good standing with the Union during their employ with Employer in a union classification. For the purpose of this Agreement

1

(b)    The Union shall have the right to appoint or designate Shop Stewards in any establishment. The Shop Steward shall report to the Union and shall not interfere with the management of the business. Shop Stewards may be designated by the Union to handle grievances and shall be given time off from their regular schedule to participate in grievance meetings with management which have been scheduled at mutually agreeable times. The Employer reserves the right to schedule grievance meetings during non-working hours. The Employer and Stewards shall treat each other with mutual respect.

(c)    Shop Stewards will be certified as having completed a course of study concerning the duties and responsibilities of a Shop Steward under this Agreement. Said certificate will be sent to the Hotel. In order to be recognized as a Shop Steward, the Union shall notify the Hotel in writing of the names of elected or certified Shop Stewards and any changes thereto.

(d)    Shop Stewards shall not interfere with the Employer's direction of the work force or with customers. The duties of the Shop Stewards shall not interfere with their duties as an employee or the duties of any employee.



### SECTION 5
### MANAGEMENT RIGHTS

(a)    Except as expressly modified or restricted by a specific provision of this Agreement, all statutory and inherent managerial rights, prerogatives and functions are retained by and vested exclusively in Employer, to exercise in accordance with its sole and exclusive judgment and discretion, including but not limited to the following:

(i)     to manage its business generally;
(ii)    to maintain order and efficiency in its operation;
(iii)   to expand, reduce, alter, combine, transfer, sell, assign, or cease any job, department, operation, or service;
(iv)    to determine the number of Employees to be employed;
(v)     to hire Employees and determine Employees' qualifications;
(vi)    to determine job content, hours of work, number of shifts, and starting and quitting times;
(vii)   to determine standards of performance;
(viii)  to issue, amend and revise such reasonable policies, rules, regulations, and practices as Employer may deem necessary or appropriate to maintain the order, safety and/or effective operation of its business;

4

(ix)   to control and regulate the use of machinery, facilities, equipment, and other property of Employer;

(x)    to lay off and recall consistent with Section 17(a) herein below;

(xi)   to promote and transfer Employees;

(xii)  to assign overtime and holiday work consistent with Sections 8(d) and 18(f) herein below;

(xiii) to assign shifts and work stations and to schedule;

(xiv)  to discipline, suspend and discharge Employees for just cause consistent with Sections 6(b) and 6(c) hereinbelow; and

(xv)   to direct the work force generally.

Employer's failure to exercise any right, prerogative or function hereby reserved to it, or Employer's exercise of any right, prerogative, or function in a particular way, shall not be considered a waiver of the Employer's right to exercise such right, prerogative, or function, or preclude it from exercising the same in some other way not in conflict with the express provisions of this Agreement. This provision shall not be interpreted to preclude the Union from raising the defense of disparate treatment in discharge or discipline cases.



(b)    Except as otherwise specifically provided in this Agreement Employer's rights as enumerated in Section 5(a) may be exercised in Employer's sole and unfettered discretion consistent with Section 17 of this Agreement as applicable. The exercise of such rights under Section 5(a) shall not be subject to the provisions of Sections 20(a) through 20(g) of this Agreement except for transfer out of job classification, or disciplinary actions that Union claims are not for just cause or actions inconsistent with Section 17 where applicable.

## SECTION 6
## EMPLOYEE DISCIPLINE

(a)    Just cause for termination of an Employee shall include, but not be limited to:

(i)    Giving false or misleading information in applying for employment;

(ii)   Falsifying any business record or document of Employer;

(iii)  Being under the influence of alcohol or illegal substances during work hours or at any time anywhere on Employer's premises;

(iv)   Using, possessing, or soliciting the use or sale of illegal substances or substance paraphernalia during work hours or

5

00034

at any time anywhere on Employer's premises, including without limitation the parking lots and vehicles in the lots;

(v)      Theft or attempted theft of any money or property of any kind belonging to Employer, a customer, or a fellow Employee;

(vi)     Removal from the premises of property belonging to Employer or customer of Employer without a property slip signed by the Employee's supervisor or other authorized representative of Employer;

(vii)    Dishonesty;

(viii)   Felony convictions;

(ix)     Willful violation of fire or safety codes or regulations;

(x)      Willful damage, destruction, or defacing of property belonging to Employer, its guests or other persons;

(xi)     Grossly negligent conduct which results in injury to any person including the Employee himself;

(xii)    Grossly negligent conduct which results in loss, damage or destruction of Employer's property or monetary loss to Employer;

(xiii)   Lewd or immoral conduct while on Employer's premises;

(xiv)    Fighting;

(xv)     Sleeping on duty;

(xvi)    Possession of weapons on the premises or attempting to bring them onto the premises;

(xvii)   Unauthorized use of services of Hotel del Coronado, including without limitation the unauthorized use of long-distance telephone services; the unauthorized use of Employer's computers to conduct personal business, the unauthorized use of any form of electronic mail whether on Employer's system or accessed through Employer's computers, or the unauthorized use of the internet/World Wide Web via Employer's computers;

(xviii)  Violent behavior, including threats of bodily harm, on Employer's premises, or conviction for violent felonious conduct.

(xix)    Failure to report to work without notice to Employer for three (3) consecutive shifts, except in rare cases of emergency;

(xx)     Excessive, absences or tardiness or the abuse thereof;

(xxi)    Gross insubordination;

(xxii)   Abandoning the work station without permission;



6

(xxiii) Consistent failure to meet Employer's reasonably established performance standards;

(xxiv) Making or filing a false or fraudulent claim for worker's compensation;

(xxv) Conduct, whether physical or verbal, toward a guest, fellow Employee, or any other person which constitutes discrimination or harassment under local, state, or federal law;

(xxvi) The accumulation of four (4) violations of Employer rules, none of which individually constitute a terminable offense, within a twelve-month period. Ordinarily, the first violation shall result in a verbal warning, the second violation a written warning, the third violation a final written warning and/or a suspension, and the fourth violation shall result in termination;

(xxvii) Gambling on Employer property or during company time; and

(xxviii) Soliciting a gratuity or adding a gratuity to a check without authorization.



(b) Just cause for discipline of an Employee (written warning notices and/or suspensions) shall include but not be limited to:

(i) Any of the offenses enumerated in Section 6(a) should Employer decide in a particular case that discharge is not desirable;

(ii) Repeated tardiness and/or absenteeism: An Employee who is absent without a written doctor's excuse from a physician licensed to practice in the State of California who is part of the Union's health plan or licensed physician in the TPN network, or tardy three (3) times within a ninety (90) day period, may be issued a warning notice;

(iii) Failure to report for a scheduled shift without notice to Employer at least two (2) hours before the start of the shift, except in proven cases of emergency or impracticability for employees with shifts commencing prior to 9:00 a.m. Such failure may merit a warning but not a suspension;

(iv) Failure to follow an established business policy or procedure of Employer relating to the handling of money of which Employee has had reasonable notice;

(v) Refusal to accept overtime when assigned by Employer in accordance with Section 8(d) hereinbelow or to work on

00036

holidays when scheduled by Employer in accordance with Section 18(g) herein below;

(vi)    Smoking in an unauthorized area;

(vii)   Using restrooms other than those designated for Employee use except in the case of an emergency;

(viii)  Interference with the work of a fellow Employee;

(ix)    Refusal to obey the order of a superior;

(x)     Shouting or use of abusive language;

(xi)    Unauthorized absence from the work area;

(xii)   Negligent conduct which results in injury to a person, including the Employee himself; and

(xiii)  Negligent conduct which results in loss, damage or destruction of Employer's property or monetary loss to Employer.

(c)    An Employee who is to be discharged without first being suspended pending investigation shall be notified of his/her discharge no later than the end of his/her shift. An Employee whose conduct is under investigation by Employer may be sent home pending review by the Human Resources Department, and if terminated, will be paid through the end of Employee's last shift worked. Payment of final wages shall be in accordance with California law.

(d)    In the event of any dispute between the parties involving Employee discipline, neither the parties nor an arbitrator hearing the matter under Section 20 hereinbelow shall consider the absence of any particular cause from Sections 6(a) or 6(b) as limiting the basis for a finding of good cause.

(e)    Employer's form of warning notice shall contain language advising Employee of Employee's right to consult with Union. Employer shall provide Employee with a copy of the warning or other discipline. No disciplinary action more than twelve (12) months old may be used as a basis for further discipline pursuant to Section 6(a) xxvi of this Agreement. To be valid a warning notice must be issued within ten (10) days of Employer's actual knowledge of the event except in unusual circumstances. Copies of warning notices shall be sent to Union monthly.

(f)    The Employer and the Union both recognize the importance of a drug/alcohol free work environment. The parties also recognize that any Employee who has a problem with drugs/alcohol should voluntarily seek immediate treatment. Accordingly, any Employee who voluntarily reports such a problem to the Employer and requests a reasonable accommodation in order to enter drug/alcohol abuse rehabilitation, prior to being requested to take a drug/alcohol test and prior to being involved in an incident that might not have occurred absent the Employee's use of drugs/alcohol, shall

8

be entitled to a reasonable accommodation, provided it does not impose an undue hardship on the Employer.

(g)    The Union agrees that the Employer may require drug/alcohol testing of Employees if a reasonable basis exists for suspecting that an Employee is impaired in any way or has engaged in the use of unauthorized or illegal drugs while on the job or on Hotel property or where the Employee has been involved in an accident. In furtherance of this policy, as well as where the Employer has a reasonable basis for suspecting that an Employee has engaged in the unauthorized removal or possession of hotel or guest property, the Employer may require employees to cooperate with a search by opening his/her locker, emptying pockets, and opening any purse, briefcase, bag, or other carrying case. Such inspection shall be conducted in the presence of a Union Steward or two bargaining unit witnesses. An Employee's failure to cooperate with the Employer under this provision shall be deemed gross insubordination.

SECTION 7
WAGES

(a)    Wage scales are set forth in Schedule "A," attached hereto and incorporated herein by reference. An Employee maybe paid at eighty-five percent (85%) of the applicable wage scale during the first six (6) months of employment, ninety percent (90%) thereof during the second six (6) months of employment, and ninety-five percent (95%) thereof during the third six (6) months of employment, and shall be increased to the then-applicable wage scale as set forth in Schedule "A" upon the Employee reaching his/her eighteenth (18th) month anniversary of employment. All such training rates shall comply with all federal and California minimum wage requirements.

(b)    "Graveyard" Shift Differential: Full-time Employees in Union categories working the "graveyard" (beginning between approximately 10:00 p.m. and 2:00 a.m.) shift shall receive fifty cents ($.50) per hour in addition to the scale as set forth in Schedule "A." However, graveyard PBX operators shall receive two dollars ($2.00) per hour in addition to the scale as set forth in Schedule "A."

(c)    The wage scales established are minimums only, and their establishment shall not prevent the payment of wages or increases above such minimums at Employer's discretion or the hiring of a new Employee in a particular classification at a rate higher than the minimum.

(d)    There shall be no deduction from the wages of an Employee other than deductions which are either authorized by the Employee in writing, authorized by this Agreement, or required by law.

9

(e)   Employees temporarily doing work in a higher-paid classification shall receive the higher rate of pay for the time during which such work was performed, provided that such work was performed for at least one (1) hour of the shift. Employees working temporarily in a lower classification for the convenience of the Employer shall receive their same rate of pay.   For this provision to apply the Employee must be working in a different classification as specified in Schedule "A."

(f)   When a new Union classification is created, Union and Employer shall negotiate an appropriate wage scale for that classification.   Should no agreement be reached, Employer shall establish the rate and the matter shall be resolved through the procedures set forth in Section 20 of this Agreement.

(g)   Non-bargaining unit Employees will not be allowed to do normal bargaining unit work on a regular basis.

## SECTION 8
## OVERTIME AND WORK SCHEDULES

(a)   Normally a straight full-time shift shall consist of eight (8) hours worked within a consecutive eight and one-half (8-1/2) hour period, with the remaining one-half (1/2) hour of each eight and one-half (8-1/2) hour period for the Employee's own use as a meal period. Said half-hour meal period shall not be considered time worked, time paid for, time paid for but not worked, or time for which the Employee is entitled to receive wages. An Employee shall not be paid for any meal period.  No Employee shall work a period of more than five (5) hours without taking a one-half (½) hour unpaid meal period, unless the total shift is not more than six (6) hours and the Employee and his/her supervisor agree in writing on a form provided by the Employer that the Employee may waive the meal period.  Nothing in this Agreement shall be construed as a guarantee of minimum or maximum hours of work per day or per week, of the number of days per week, days off, or of working schedules.  Schedules and actual hours worked are based on business requirements.

(b)   Employer shall not schedule full-time non-tipped straight shift Employees for shifts shorter than eight (8) hours, except as set forth in Schedule A or on occasion with prior notice to Union as a result of business necessity (e.g., employee meeting).

(c)   Split shifts aggregating not more than eight (8) hours of actual work, plus one-half (1/2) hour meal period, shall be worked within a spread of time not to exceed thirteen (13) consecutive hours, and only two splits shall be allowed during any workday. Split shifts shall normally consist of breakfast and lunch or lunch and dinner. Split shifts consisting of breakfast and dinner shall be assigned on a voluntary basis

10

when possible, and when not possible shall be offered on the basis of seniority and thereafter assigned on the basis of reverse seniority. Any Employee that works in excess of the amount of time scheduled on any split shift shall be paid for such extra time worked at the hourly rate. Employees assigned to a split shift shall receive any payments as provided by law for such split shift assignments.

(d)     All work performed by an Employee in excess of forty (40) hours in a workweek or eight (8) hours during any workday shall constitute overtime, and shall be paid for at the rate on one and one-half (1-1/2) times the regular hourly rate of pay. Additionally, non-tipped Employees, except Front Desk Employees, who work seven (7) or more consecutive days, unless voluntarily, shall be paid one and one-half (1-1/2) times the regular hourly rate of pay for the seventh (7th) and consecutive days worked thereafter. Employer's pay records shall govern the payment of all overtime wages unless overtime is otherwise substantiated. Employer may require overtime to meet the needs of its business. Employees in a department shall give written notice to their supervisors of on-going outside commitments or responsibilities that limit their availability to work overtime, and supervisors shall not require overtime that conflicts with such commitments for Employees who have given such advance written notice. Union acknowledges that such limitations on availability to work overtime may occasionally affect scheduling as the press of business dictates. Employer shall schedule  overtime first by offering it according to seniority, then by assigning it according to reverse seniority, provided that no Employee in a job classification within department will be assigned to work a second overtime shift in a month before all other Employees in the job classification within department are given the opportunity to work a first overtime shift.

(e)     No Employee shall be required to work succeeding regular or split shifts without at least an eight (8) hour rest period in between, except in connection with Easter, Mother's Day, and New Year's events. However, on a voluntary basis, Employees may agree in writing on a form provided by the Employer to waive the eight (8) hour rest period. Said waiver may be revoked in writing by Employee at any time with at least twenty-four hours' notice to Employer.

(f)     The "workweek" shall be that period from Saturday at 12:01 a.m. to the following Friday at 12:00 midnight. A "workday" shall be that period from 12:00 o'clock midnight to 12:00 o'clock midnight the following day.

(g)     All Employees are required and responsible for taking one ten (10) minute paid rest period for each four (4)-hour period of time worked. An Employee shall obtain authorization from his/her supervisor before taking a rest period away from the Employee's work area. No disciplinary action shall be taken against an Employee unless the Employee is away from the work station or otherwise non-productive for

11

more than fifteen (15) minutes for a rest period. No break shall apply to shifts of less than three and one-half (3-1/2) hours.

(h)    All work may be scored in units of fifteen (15) minutes or less.

(i)    Where feasible a five-day work week with two regular days off shall be instituted. Employer shall schedule full-time Employees for more than five consecutive days in a seven-day period only in the case of emergencies beyond the control of Employer due to acts of God, or in the case of unexpected fluctuations in business or unexpected staffing shortages of which Employer became aware less than a week prior to the shifts scheduled. Where it is necessary for Employer to schedule an Employee for more than five consecutive days' work in a seven (7) day period, such work shall be offered by seniority and assigned by reverse seniority, provided that Employees who have previously worked more than five (5) consecutive days may decline to work more than five (5) consecutive days the next time such an assignment is made within a month, and the assignment will proceed to the next most senior Employee, that is, the next person higher on the seniority list to be assigned by reverse seniority. Employer shall not unilaterally make changes to an Employee's days off in order to avoid overtime, though Union acknowledges that the needs of Employer's business and the application of seniority during slower periods may sometimes cause changes in an Employee's regularly-scheduled days off.



(j)    Except in the Banquet and Stewarding Departments, on the Wednesday before the next week Employer shall post in a conspicuous place a work schedule specifying the hours of work and the days off of each Employee for seven (7) consecutive calendar days, and specifying the type of shift each Employee is required to work, whether straight full time, or split shift, or two (2), three (3), four (4), five (5), six (6), or seven (7) hour shifts. In the Banquet and Stewarding Departments the schedule shall be posted as soon as possible, but in no event later than Thursday at 3:00 p.m. to allow Employer to complete the Banquet Event Orders for the coming week. An Employee's day off shall not be changed involuntarily without at least twenty-four (24) hours' prior notice to the affected Employee, except in cases of emergency, adverse weather for outdoor-related positions, or unexpected business fluctuations for banquet-related positions.

(k)    An Employee (other than in the Banquet Department) who reports for work as scheduled but is not put to work by Employer shall be paid for fifty percent (50%) of the scheduled shift, but in no event less than three (3) hours. In the event the Employee (except in the Banquet Department) is put to work and then sent home prior to the end of the Employee's scheduled shift, the Employee shall be paid for the full shift. Reporting time pay does not apply if Employee is given at least twenty-four (24) hours notice of cancellation or change of shift. Reporting time pay shall not apply to Banquet

12

00041

Employees in any event. Banquet Employees shall be paid as specified in the California Industrial Welfare Commission Wage Orders as issued from time to time.

## SECTION 9
## UNIFORMS OR JACKETS

Employer shall furnish and launder uniforms or jackets for all uniformed Employees without cost to such Employees. For Employees working outdoors, including Housekeepers, the Employer shall make available sweaters and/or jackets. This section shall be applicable only if Employer requires a uniform or jacket unique and peculiar to the establishment and not usable as a garment anywhere elsewhere.

## SECTION 10
## GRATUITIES AND SERVICE CHARGES

(a)    Gratuities are the property of Employees and are not part of the basic wage established by this Agreement. They are paid directly to Employees from members of the public and are not payable by Employer. Tipped Employees may, but are not required to, share tips with and among non-tipped Employees as determined by the circumstances.



(b)    Employer retains the right to determine banquet service charges in its sole discretion consistent with the provisions of this Section 10.

(c)    Banquet Department Employees shall receive a service charge as collected on sales of consumable banquet food and beverage items as follows: (1) an 11.35% service charge shall be paid out to Banquet Employees based on hours worked (except for hours worked by Employees assigned as Bartenders at non-hosted bars and hours worked by Employees on Sunday brunches and public holiday meals) and (2) a 0.65% service charge shall be pooled each payroll period and distributed to Convention Services Leads and Crew based on hours worked. The 11.35% service charge shall be increased to 11.60% on January 1, 2006, to 11.75% on January 1, 2007, and to 11.90% on January 1, 2008. The 0.65% service charge shall be increased to 0.75% on July 1, 2006, and to 0.90% on July 1, 2008. For Employer hosted (AB&P) banquet functions, the foregoing service charges shall be based on the retail value of the consumed banquet food and beverage items.

(d)    On public dining parties (non-banquet) of eight (8) or more, an automatic eighteen percent (18%) gratuity will be added to the customer's bill, and will be the sole property of the Employees serving such party. Employer agrees that for Hotel-hosted (AB&P) parties in public dining outlets (non-banquet) or room service, the gratuity to the Employees serving such parties shall be fifteen percent (15%). Employer shall

13

The term "man", "women", "boy", "girl", or any suffix denoting gender attached to any job classification in Schedule "A" attached hereto shall have no bearing on pay rates, and men and women performing equal work shall receive equal pay.

## SECTION 12
## PROHIBITION OF INDIVIDUAL CONTRACTS

Except as set forth in section 7(c) of this Agreement Employer shall not enter into any individual contract or agreement with an Employee covered by this Agreement if such agreement varies any of the terms and/or conditions contained in this Agreement.

## SECTION 13
## MEAL PROVISIONS

(a)    Employees accepting Employer-provided meals shall consume their meals on the premises at such time and in such place and manner as Employer deems necessary for its convenience. Such meals shall be of acceptable quality.

(b)    Employer shall provide one (1) meal per shift worked at no cost to all bargaining unit Employees. Such meal shall be consumed either during the shift worked (during the Employee's lunch period) or during the one-half (1/2) hour period immediately prior to the shift or immediately after the shift. In the case of a split shift the Employee shall consume the meal during one of the one-half hour periods immediately before or after each portion of the split shift. In accordance with Section 8(a) above, no meal period shall be considered time worked, time paid for but not worked, or time for which an Employee is entitled to receive wages; and an Employee will not be paid for said meal period.

(c)    Employer shall provide Employees with a suitable place for the consumption of said meals. Employees shall utilize the place provided by Employer and no other. If the Employee Cafeteria is closed either before or after an Employee's shift, the meal shall be eaten at the time before or after when the Cafeteria is open, or the meal shall be considered waived. No Employees may use public dining outlets or kitchens for meals under this Agreement unless business conditions have made it impossible for an Employee to eat the meal when the Cafeteria is open and another arrangement has been approved in writing by the Employee's manager.

(d)    Employees who choose not to eat meals furnished by Employer shall have no claim against Employer for cash in lieu of meals.

16

(ii)    Employees may request a paid sick leave day when ill, or as permitted by law. Employees must call in two (2) hours in advance in order to qualify for the sick leave benefit, except in cases of a bona fide emergency. Employer reserves the right to have the Employee provide proof of illness and/or emergency.

(iii)    Employees may "bank" up to a maximum of ten (10) sick days. Upon banking ten (10) days, an employee may cash in up to five (5) days at fifty (50%) of value. Unused sick leave shall not be paid out upon termination of employment.

(c)    Employees who work at least one thousand forty (1,040) hours per year, and who have been continuously employed at least one (1) year at the time of request, are entitled to two (2) days' paid leave per year, based on average daily hours worked, in the event of the death of an immediate family member. Immediate family is limited to children, current spouse or domestic partner, parents, brothers, sisters, and grandparents. Employer reserves the right to require written substantiation of the death and the relationship of the deceased to the Employee. Funeral leave does not carry over from year to year.

## SECTION 16
## LOCKERS, DRESSING ROOMS, AND BULLETIN BOARDS



(a)    Employer shall furnish dressing rooms and lockers for Employees who, in Employer's opinion, need them for the performance of their duties. Rooms and lockers shall remain the property of Employer, and Employer may inspect Employee lockers and their contents without prior notice to Employees. Employer shall have no responsibility for theft or loss of any kind from Employee lockers.

(b)    Employer will provide a glass enclosed, locked bulletin board for Union to utilize at or near the Employee cafeteria. Union shall not post or allow to be posted any messages hostile or adverse to Employer on this bulletin board. Nor shall any Union-related political campaign material be posted.

## SECTION 17
## SENIORITY AND JOB PERFORMANCE

(a)    In any selection of the number and days of employment and days off; the scheduling and assignment of shifts; the assignment of overtime; promotions; transfers; and the scheduling of vacations the principle of seniority within classification in department shall prevail where the Employee has the ability to perform the work, except as otherwise provided for in the Agreement. In any reduction or restoration of the workforce, the principle of seniority within the department shall prevail, provided the Employees' abilities, qualifications, experience, training, and performance records are

19

substantially equal. Thus, for example, in the case of an elimination of a position due to a closing of an outlet, the employees whose position was eliminated would be transferred with their seniority to the closest likewise food and beverage position available.

(b)    For promotions and assignment of work and work stations, the principle of seniority shall prevail where Employee's abilities, qualifications, experience, training, and performance records are substantially equal. The determination of an Employee's abilities, qualifications, experience, training and performance records shall be the right and prerogative of Employer, and Employer's discretion shall be exercised reasonably.

(c)    Employees who voluntarily transfer to a new job classification, department, or position shall measure their seniority from the date on which they made the transfer. Voluntary transfers are subject to the ability of the Employee to perform the work required and the permission of Employer. Voluntary transfers shall be defined as transfers initiated by the Employee and not the Employer, regardless of whether the position is posted

(d)    Employees who involuntarily transfer within their job classifications shall retain their seniority within their classifications. Employees who are transferred involuntarily to another job classification shall measure their seniority in their new job classification from their date of hire or the date of their most recent voluntary transfer, whichever is later. The application of this Section is subject to the ability of the Employee to perform the work required.

(e)    When the volume of the Employer's business in the Front Office does not allow for all Employees to have five days of work in a work week, Employer shall first attempt to accommodate the need for a work reduction on a voluntary basis. Thereafter, work shall be assigned such that all bargaining unit Employees in the department shall receive up to three shifts. Remaining work shall be assigned according to seniority subject to the Employee's ability to perform the work required. Seniority shall not apply to Employees who have not passed their probationary period. The application of seniority under this provision does not guarantee any minimum number of shifts or hours to any Employee.

(f)    Housekeeping Department room assignments shall be given according to seniority, except as provided herein. For no more than eleven weeks during the period of November 1 through February 1, should the volume of Employer's business in Housekeeping not allow for all Employees to have five days of work in a workweek, Employer shall first attempt to accommodate the need for a work reduction on a voluntary basis. Thereafter, for all Employees in the Housekeeping Department with more than eighteen months of service, the principle of seniority shall apply in

20

accordance with Sections 17(a), (b), (c) and (d) of this Agreement.  During such period, for Employees in the Housekeeping Department with less than eighteen months of service, available days of work shall be assigned one to each such Employee until all Employees receive one day of work before any Employee in this less senior group receives a second day, until all days of work have been assigned.  Seniority shall not apply to Employees who have not passed their probationary period, and all assignments pursuant to this provision are subject to an Employee's ability to perform the work required.

    (g)    An Employee's seniority status may be terminated for the following reasons:

        (i)     If the Employee resigns;

        (ii)    If the Employee retires;

        (iii)   If the Employee is terminated for cause;

        (iv)   If the Employee is on layoff for a period exceeding nine (9) months;

        (v)    If the Employee fails to return on time from a scheduled leave of absence without reasonable excuse;

        (vi)   If the Employee fails to return from recall within seven (7) calendar days of receiving a certified recall letter or a person-to-person telephone call from the Employer, without reasonable excuse; or

        (vii)  If the Employee gives a false reason for obtaining a leave of absence.

## SECTION 18
## HOLIDAYS

    (a)    The Employer recognizes the following days as holidays: Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day and New Year's Day. (The definition of New Year's Day shall be a twenty-four period starting at 6:00 p.m. December 31st and extending until 6:00 p.m. January 1st.)

    (b)    Non-probationary Employees who work at least one thousand hours (1,000) per year shall be paid at two (2) times their regular hourly rate of pay for work on these holidays.  All probationary Employees, and non-probationary Employees who work less than one thousand hours (1,000) per year, shall be paid at one and one-half (1-1/2) times their regular hourly rate of pay for work on these holidays.

    (c)    Employees who work at least one thousand hours (1,000) per year, and do not work on one of the above-listed holidays, shall receive straight-time holiday pay based on their average daily hours worked, provided (i) the Employee has been on the payroll for ninety (90) days prior to the holiday; (ii) the Employee shall have worked the Employee's last scheduled day before the holiday and the next scheduled day after the

21

available opening in the Employee's former classification, as a new hire without seniority, upon the Employee providing proper work authorization within a maximum of twelve (12) additional months. The parties agree that such Employees would be subject to a probationary period in this event.

(e)    The Employer will furnish to any Employee terminated because he or she is not authorized to work in the United States, a personalized letter stating the Employee's rights and obligations under this section 26.

## SECTION 27
## HOUSEKEEPING WORK LOADS

(a)    In Housekeeping, the Employer shall maintain a quota of rooms to be completed by Employees of fourteen (14) rooms, except during the period between Memorial Day and Labor Day when that quota shall be thirteen (13) rooms.

(b)    The parties further agree that when an Employee is assigned to complete nine (9) or more checkout rooms, the Employee shall be permitted to drop one room from the quota for that day. The Employer will not move an Employee's section for the purpose of avoiding dropping a room.



(c)    When a Room Attendant is assigned to clean rooms on two (2) or more floors in the Victorian building, three (3) or more floors in the Ocean Tower, or in two (2) or more buildings, the daily room assignment shall be reduced by one (1) room. This section shall not apply among the beach cottages, but shall apply between the beach cottages and the other buildings.

(d)    Room Attendants shall perform all necessary guest room and bathroom cleaning as in the past, but excluding deep cleaning (including any work that would require climbing on any furniture), complete window washing (but shall perform spot cleaning of windows), heavy lifting, mattress turning, and/or moving heavy furniture unless assistance is provided. Additionally, room attendants shall replace rather than wash dirty drinking glasses and mugs.

(e)    At the Employee's option, he or she may elect to "buy a room" above the quota for a particular day so long as the Employee can complete the bought room(s) without incurring overtime. Employees will be paid five dollars and twenty-five cents ($5.25) for each room bought, which shall be increased to five dollars and fifty cents ($5.50) on January 1, 2006, to five dollars and seventy-five cents ($5.75) on January 1, 2007, and to six dollars ($6.00) on January 1, 2008. Nothing in this provision shall limit the right of Employer to assign a room attendant who has completed his/her assigned section, who does not wish to buy a room, or for whom no rooms are available to be

29

bought, to assist other room attendants in completing their assigned sections as per current practice.

(f) Employees will also be paid one dollar and twenty-five cents ($1.25) for each roll away and/or cot serviced during the workday. The foregoing amount shall be increased to one dollar and fifty cents ($1.50) on January 1, 2006, to one dollar and seventy-five cents ($1.75) on January 1, 2007, and to two dollars ($2.00) on January 1, 2008.

(g) Within three (3) months of occupancy of the first group of the cottage and villa units, which are to be constructed, the parties shall meet to review the Employer's workload assignments for room attendants assigned to clean such units. In the event the parties are unable to agree upon an appropriate workload, the Union's sole remedy shall be to appeal the matter to mediation and/or interest arbitration within six (6) months of the first occupancy.

## SECTION 28
## UNION LEAVE OF ABSENCE



In the event that an employee is elected or appointed to a position of full-time service with the Union, the Employee shall continue to accrue seniority if the leave is for six (6) months or less. Where such a leave continues for more than six (6) months, the Employee's seniority shall be frozen during the entire leave period. Regardless of the length of leave, no Employee shall accrue or be entitled to any benefits while on leave. Upon completion of service at the Union, the Employee shall be returned to his/her former position at the appropriate rate of pay for that position, provided the Employee's position still exists and the Employee applies for work within thirty (30) calendar days after completion of Union service.

## SECTION 29
## SUCCESSORS AND ASSIGNS AND SUBCONTRACTING

(a) In the event that the Employer sells, transfers, or assigns all or any part of its right, title, or interest in the operation covered by this Agreement, or substantially all of the assets used in such operation, or in the event there is a change in the form of ownership of the Employer, the Employer shall give the Union reasonable advance notice thereof in writing and the Employer further agrees that as a condition to any sale, assignment, or transfer, the Employer will obtain from its successors or successors in interest a written assumption of the Agreement and furnish a copy thereof to the Union, in which event the Employer shall be relieved of its obligations hereunder to the extent that the Employer has fully transferred its right, title or interest. The Union shall not be required to post a bond or other security as a condition to obtaining an injunction or

00048

other equitable relief for the failure of the Employer to require a buyer to execute a written assumption agreement in violation of this section.

(b)    This Agreement shall not apply to any subcontracting or outsourcing past practice that the Employer continues.

## SECTION 30
## SCOPE OF AGREEMENT

(a)    This Agreement shall be effective as of July 1, 2005 and shall remain in full force and effect until June 30, 2009, at 11:59 p.m. and from year to year thereafter unless either party has given written notice to the other party, at least sixty (60) days prior thereto, of its intention to amend, modify, or terminate this Agreement.

(b)    The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and agreement arrived at by the parties after lengthy discussions and exercise of those rights and opportunities are set forth in this Agreement.  The provisions of this Agreement constitute the entire Agreement  between the Employer and the Union and may be changed only in accordance with the provisions set forth herein, or by mutual agreement of the parties reduced to writing and signed by them.

(c)    The Employer and the Union for the life of this Agreement, voluntarily and unqualifiedly, waive the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter referred to or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered by this Agreement even though the subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement.

(d)    No one or more provisions of this Agreement may be interpreted to deny to the Employer the right to do anything not forbidden by the Agreement.  Employer policies and practices may not be subject to the grievance procedure or any other form of redress unless specifically addressed herein.  No other Employer benefits or obligations arising out of prior practice shall be binding upon the Employer.

## SECTION 27
## MISCELLANEOUS PROVISIONS

31

(a)    Captions in this Agreement are inserted for convenience only and do not define, describe or limit the scope or the intent of this Agreement or any of the terms hereof.

(b)    When used in this Agreement and whenever the context so requires the masculine gender shall include the feminine and neuter genders, the singular number shall include the plural, and vice versa.

(c)    The provisions of this Agreement shall be deemed independent and severable, and the partial or complete invalidity or unenforceability of any provision shall not affect the validity or enforceability of any other provision.

(d)    A waiver by either party of any of its rights under any provision of this Agreement shall be considered a one-time waiver only, and shall have no effect whatsoever upon any subsequent actions of either of the parties.

(e)    Any provision of this Agreement not covered by federal law shall be subject to and governed by the laws of the State of California as applicable.

(f)    No provision of this Agreement shall be interpreted for or against either party by reason of that party, or its legal representative, having drafted it. Union and Employer shall recognize that this Agreement has unique features which may not be applicable to any other hotel or restaurant establishment. This Agreement shall not be interpreted by reference to any other employment agreement in the hotel industry, or any practice thereunder, or by reference to any employment practice or custom in the hotel industry.

EMPLOYER:                              UNION:

KSL DC MANAGEMENT, LLC, d/b/a   UNITE HERE LOCAL 30
HOTEL DEL CORONADO

By: _____    By: _____

Title: _PRESIDENT_____    Title: _____

Date: _6/30/05_____    Date: _6-30-05_____

32

00050

## AMENDMENT TO COLLECTIVE BARGAINING AGREEMENT

This Amendment to Collective Bargaining Agreement ("Amendment") is entered into by and between UNITE HERE Local 30 ("Union") and KSL DC Management, LLC, d/b/a Hotel del Coronado ("Employer") to amend the collective bargaining agreement between the Union and the Employer, which is in effect from July 1, 2005 through June 30, 2009 ("Agreement"), for the following purposes:

WHEREAS, the parties agreed in subsection 27(g) of the Agreement to review the workload for room attendants assigned to clean Beach Village within three (3) months of occupancy of the first group of villa units;

WHEREAS, the parties have met and bargained in good faith and have agreed to modify the workload as set forth below;

NOW THEREFORE, the parties agree that the Agreement should be amended as follows:

Effective upon both parties signing this Amendment, Section 27 of the Agreement shall be replaced in its entirety with the following:

### SECTION 27
### HOUSEKEEPING WORK LOADS

(a)    In Housekeeping, the Employer shall maintain a quota of rooms to be completed by Employees of fourteen (14) rooms or credits, except during the period between Memorial Day and Labor Day when that quota shall be thirteen (13) rooms or credits. However, for the Beach Village, the foregoing quotas shall each be reduced by one (1), with the room credits to be as discussed and agreed upon by the parties on November 30, 2007.

(b)    The parties further agree that when an Employee is assigned to complete nine (9) or more checkout rooms, the Employee shall be permitted to drop one (1) room from the quota for that day. However, for the Beach Village, an Employee shall be permitted to drop one (1) credit from the quota for that day when the Employee is assigned six (6) or more checkout credits and two (2) credits when the Employee is assigned nine (9) or more checkout credits. The Employer will not move an Employee's section for the purpose of avoiding dropping a room.

(c)    When a Room Attendant is assigned to clean rooms on two (2) or more floors in the Victorian building or three (3) or more floors in the Ocean Tower, the daily room assignment shall be reduced by one (1) room. When a

Room Attendant is assigned to clean rooms with entrances on three (3) floors in the Beach Village, the daily room assignment shall be reduced by one (1) credit. When a Room Attendant is assigned to clean rooms in two (2) or more buildings, the daily room assignment shall be reduced by one (1) credit; however, this shall not apply among the Beach Village buildings, but shall apply between the Beach Village and the other buildings.

(d)    Room Attendants shall perform all necessary guest room and bathroom cleaning as in the past, but excluding deep cleaning (including any work that would require climbing on any furniture), complete window washing (but shall perform spot cleaning of windows), heavy lifting, mattress turning, and/or moving heavy furniture unless assistance is provided. Additionally, room attendants shall replace rather than wash dirty drinking glasses and mugs.

(e)    At the Employee's option, he or she may elect to "buy a room" above the quota for a particular day so long as the Employee can complete the bought room(s) without incurring overtime. Employees will be paid five dollars and seventy-five cents ($5.75) for each room bought, which shall be increased to six dollars ($6.00) on January 1, 2008. Nothing in this provision shall limit the right of Employer to assign a room attendant who has completed his/her assigned section, who does not wish to buy a room, or for whom no rooms are available to be bought, to assist other room attendants in completing their assigned sections as per current practice.

(f)    Employees will also be paid one dollar and seventy-five cents ($1.75) for each roll away and/or cot serviced during the workday. The foregoing amount shall be increased to two dollars ($2.00) on January 1, 2008.

In witness whereof, the parties have executed this Amendment as of the $\underline{3C}$ day of October 2007:

**KSL DC Management, LLC, d/b/a**          **UNITE HERE Local 30**
**Hotel del Coronado**


_____                    _____
Todd Shallan                                Brigette Browning
Vice President and General Manager          President

BALLARD ROSENBERG GOLPER & SAVITT LLP
10 Universal City Plaza, Sixteenth Floor
Universal City, CA 91608-1097

1                  **PROOF OF SERVICE**

2  **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3         I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 10 Universal City Plaza,
4  Sixteenth Floor, Universal City, California 91608-1097.

5         On July 23, 2008, I served the following document(s) described as **NOTICE OF REMOVAL OF CIVIL ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
6  **THEREOF** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

7

8  Timothy L. Brictson, Esq.
Law Office of Brictson & Cohn
2214 Fifth Avenue
9  San Diego, CA 92101

10

☐    **BY MAIL:** I am "readily familiar" with Ballard Rosenberg Golper & Savitt's practice for
11    collecting and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day
12    in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Universal City, California, on that same day following
13    ordinary business practices.

14  ☐    **BY FACSIMILE:** At or before 5:00 p.m., I caused said document(s) to be transmitted by facsimile. The telephone number of the sending facsimile machine was (818) 506-4827. The
15    name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The document was transmitted by facsimile transmission, and the sending
16    facsimile machine properly issued a transmission report confirming that the transmission was complete and without error.

17

☒    **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility
18    regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an
19    envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) being served.

20

☐    **BY PERSONAL SERVICE:** I personally delivered such envelope(s) directly to the
21    person(s) being served.

22         I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

23

       Executed on July 23, 2008, at Universal City, California.
24

25

26                  DARLA W. SALTER

27

28
                                       00053

JS 44 (Rev. 12/07)

**CIVIL COVER SHEET**    BY FAX

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
NELIA MILLS

**DEFENDANTS**
KSL DC MANAGEMENT, LLC dba HOTEL DEL CORONADO, and DOES 1 to 50

FILED

2008 JUL 23  PM 3: 54

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 1333 BTM POR

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Timothy Brictson, Esq.
Law Office of Brictson & Cohn
2214 Fifth Avenue
San Diego, California 92101
Phone: (619) 296-9387; fax: (619) 232-0583

Attorneys (If Known)
Matthew R. Wakefield - SBN 124958 - mwakefield@brgslaw.com
Eric C. Schwettmann - SBN 188784 - eschwettmann@brgslaw.com
Alexandra M. Steinberg - SBN 227427 - asteinberg@brgslaw.com
10 Universal City Plaza, 16th Fl., Universal City, California 91608
Phone: (818) 508-3700; fax: (818) 506-4827

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury — Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  / ☐ 385 Property Damage Product Liability | ☒ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | **IMMIGRATION** |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 462 Naturalization Application |  |  |
|  |  | ☐ 463 Habeas Corpus – Alien Detainee |  |  |
|  |  | ☐ 465 Other Immigration Actions |  |  |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. Section 185(a); 29 U.S.C. Section 152(2), (7)
Brief description of cause:
Preemption under Labor Management Relations Act Section 301

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE
July 23, 2008
SIGNATURE OF ATTORNEY OF RECORD
_Eric C. Schwettmann_

**FOR OFFICE USE ONLY**
RECEIPT # 153987    AMOUNT $350    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____
TAC 7/23/08

ORIGINAL

American LegalNet, Inc.
www.FormsWorkflow.com

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

## # 153287    — TC

## July 23. 2008
## 15:52:14

## Civ Fil Non-Pris
USAO #.: O8CV1333
Judge..: BARRY T MOSKOWITZ
Amount.:                    $350.00 CK
Check#.: BC220691

Total—>   $350.00

FROM: NELIA MILLS
      VS.
      KSL DC MANAGEMENT